IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAY DOROSHOW, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 08-259 |
| HARTFORD LIFE AND ACCIDENT INSURANCE CO. and CVS CORPORATION LONG TERM DISABILITY INCOME INSURANCE PLAN | |
| Defendants. | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                              **MAY 30, 2008**

This is an action to recover benefits under an employee welfare benefit plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. Presently before this Court are Cross-Motions for Summary Judgment. For the reasons stated below, the Plaintiff's Motion is denied, and the Defendant's Motion is granted.

**I.      BACKGROUND**

Plaintiff Jay Doroshow ("Doroshow") was employed as a pharmacist at a CVS/pharmacy ("CVS") in Bensalem, Pennsylvania from March 19, 2006 through March 29, 2007. During this period of employment, he was eligible to participate in a disability insurance plan established by CVS for the benefit of its employees. This insurance plan provided Doroshow with an income benefit equal to sixty percent of his monthly earnings in the event that he became disabled. Doroshow chose to participate in the plan, and began receiving long term disability coverage as of July 1, 2006.

CVS funded this disability insurance plan via a group insurance policy it purchased from Hartford Life and Accident Insurance Company ("Hartford"). Like most insurance policies, the Hartford policy provided coverage to participants pursuant to certain limitations. One of those limitations involved pre-exiting conditions. The plan did not provide coverage for "any loss caused by, contributed to, or resulting from . . . a *Pre-existing Condition*[.]" (Def.'s Rep. Admin. R. [hereinafter "Admin. R."] at HLI0012.) The policy defined pre-existing condition as follows:

> ***Pre-existing Condition*** means a condition for which medical treatment or advice was rendered, prescribed or recommended within 12 months (3 months for exempt employees) prior to *Your* effective date of insurance. A condition shall no longer be considered pre-existing if it causes *Disability* which begins after *You* have been insured under the Policy for a period of 12 months.

(Admin. R. at HLI0013.) Additionally, under the terms of the contract, CVS "delegated sole discretionary authority to Hartford . . . to determine [participant's] eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it." (Admin. R. at HLI0024.)

Doroshow was diagnosed with Amyotropic Lateral Sclerosis ("ALS") on March 15, 2007, and applied for long-term disability benefits under the above described disability insurance plan on March 16, 2007. Thereafter, Doroshow left his job on a medical leave of absence on March 29, 2007. Hartford received the claim on August 3, 2007, and after reviewing the medical information contained therein, denied Doroshow's claim on August 30, 2007. Hartford sent Doroshow a letter explaining its reason for the denial. That letter stated:

> Our review of all of the medical information in your claim file shows that you are claiming benefits because of symptoms related to motor neuron disease (MND), which includes amyotrophic lateral sclerosis (ALS). The medical records obtained from the office of Dr. Goldstein indicate that you were treated for this condition on 05/16/2006. ALS was discussed in this OV, likely due to the type of

> symptoms you were experiencing and the family history of this disease. Intermittent workup and follow up continued for your reported symptoms until definitive diagnosis was reached in March 2007. You were provided advice related to the possibility of an ALS diagnosis on 05/16/2006, and the symptoms were certainly a precursor to the eventual diagnosis of ALS. This treatment date falls within the 3 month period that ends before your effective date of LTD coverage. This information shows that your condition was Pre-existing.

(Admin. R. at HLI0090.) Hartford determined that Doroshow was subject to the pre-existing condition exclusion, and denied his claim.

The medical records that Hartford referenced in its letter were from Doroshow's primary physician, Arnold Goldstein, M.D. In particular, Hartford relied on Dr. Goldstein's office notes following his treatment of Doroshow on May 16, 2006. In those notes, he wrote:

> ASSESSMENT:
> 1. CVA - lost 20 pounds. Working full time. Some residual weakness on the right side. Exercising using recumbent bike.
> 2. Motor neuron disease. Lumbosacral plexitis is the most recent diagnosis. Was not felt to be ALS.
> 3. Hypertension. Blood pressure has been stable. He takes it at work.
> 4. Laboratory. Cholesterol is 132, triglycerides are 94, HDL is 383 and LDL is 75.
> 5. MRI showed resorption of hemorrhage in the left basal ganglia. Still waiting for disability.

(Admin. R. at HLI0057.) At the time of this visit, Dr. Goldstein thought that Doroshow had motor neuron disease, but did not feel that it was ALS. Based on this information, Hartford determined that Dr. Goldstein had rendered advice pertaining to ALS, the disease upon which Doroshow based his application for long-term benefits.

The medical records before Hartford pointed to also included evidence that Doroshow had received advice and endured testing related to ALS during the two years preceding the May 16, 2006 visit with Dr. Goldstein. On July 20, 2005, an electromyographic ("EMG") test was

performed on Doroshow by Mark J. Brown, M.D., of the University of Pennsylvania, Department of Neurology.  This evaluation was performed following complaints Doroshow made about leg weakness and a right foot drop problem.  Dr. Brown wrote the following notes following the test:

> Impression
> 1. Chronic active degeneration of right leg, arm, paraspinal and bulbar muscles with near-normal nerve conduction studies.  These are features of a motor neuron disease.
> 2. If the left Babinski sign is a consistent feature then he has the ALS form of motor nueron disease.
> 3. Mild small fiber-type sensory polyneuropathy of doubtful clinical significance.

(Admin. R. at HLI0072.)  Dr. Brown recommended that Doroshow see an ALS specialist at the University of Pennsylvania for further evaluation and care.

On July 27, 2005, Doroshow visited Leo McCluskey, M.D., for a neurologic consultation.  In the notes from that examination, Dr. McCluskey wrote, "Doroshow demonstrates evidence of a lower motor neuron process affecting his right leg[,]" and also that "[h]e has no upper motor neuron signs."  (Admin. R. at HLI0116.)  Dr. McCluskey felt that "[t]hese are features that do not support the diagnosis of amyotropic lateral sclerosis [ALS] or a progressive motor neuron disorder[,]" and he thought that "lumbosacral plexopathy[1] should at least be considered in this situation."  (Id.)  Dr. McCluskey continued to treat Doroshow for motor neuron disease during the period between April 1, 2006, and June 30, 2006, and he was the doctor who conclusively diagnosed Doroshow with ALS on May 15, 2007.

After his claim for long term disability benefits was denied, Doroshow retained legal counsel, and appealed Hartford's decision via the insurer's administrative procedure.  On

---

[1] Plexopathy in this sense is a disease or disorder of an interlacing network of nerves.  See J. E. Schmidt, M.D., Attorneys' Dictionary of Medicine P-296 (2007) (definitions of "plexopathy" and "plexus").

December 13, 2007, Hartford upheld its initial decision denying Doroshow's claim on the basis of ineligibility under the pre-existing condition exclusion. On January 15, 2008, Doroshow filed an action in this Court pursuant to 29 U.S.C. § 1132(a)(1)(B) in which he claims that Hartford made its decision in an arbitrary and capricious manner. On March 30, 2008, Doroshow filed a Motion for Summary Judgment. Hartford filed a Motion for the same on April 7, 2008, and submitted a copy of the administrative record it used in reviewing the claim. Responses to these Motion have been filed, and this Court will address the arguments advanced by these Motions.

## II.     STANDARD OF REVIEW

Summary judgment is proper and "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). In the absence of any material factual disputes, summary judgment must be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record which it believes demonstrate the absence of material factual disputes. Id. at 323. The non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. Id. at 321 n. 3. Where cross-motions for summary judgment have been presented, the Court must consider each motion individually. Reinert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593 (E.D. Pa. 1998).

Each side bears the burden of establishing a lack of genuine issues of material fact, and showing that it is entitled to judgment as a matter of law. Id. at 593-94. "[S]ummary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

### III.  DISCUSSION

The question before this Court is whether Hartford, as administrator of a benefits plan governed by ERISA, interpreted and applied the terms of the disability insurance plan in a reasonable manner, and whether its decision to deny Doroshow's claim under the pre-existing condition exclusion was supported by substantial evidence. There are no material factual disputes in this matter, rather both parties argue in their respective Motions that they are entitled to judgment as a matter of law. When addressing claims that an administrator made a benefits determination in violation of ERISA, this Court must first ascertain the appropriate standard of review to apply when conducting its review. After ascertaining the proper level of scrutiny, the Court then determines whether the administrator's decision was arbitrary or capricious.

ERISA does not specify the standard of review that a trial court should apply in actions pursuant to 29 U.S.C. § 1132(a)(1)(B). Thus, the analysis must begin with the Supreme Court's seminal decision in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). In Firestone, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. When the administrator has discretionary authority, any decisions made pursuant to that discretionary authority should be reviewed under an abuse of discretion standard, also known

as an arbitrary and capricious standard. The Supreme Court then added that when reviewing a decision under the arbitrary and capricious standard, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id.

The various appeals courts have interpreted the "weighed as a factor" language to mean that the deference afforded the administrator under the abuse of discretion standard must be adjusted in relation to the presence and severity of conflicts. The Third Circuit has adopted a sliding scale approach to address the issue of conflicts on the part of the administrator, and how they affect the deference the courts must afford. See Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000). "This approach grants the administrator deference in accordance with the level of conflict." Post v. Hartford Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007). "Thus, if the level of conflict is slight, most of the administrator's deference remains intact, and the court applies something similar to traditional arbitrary and capricious review; conversely, if the level of conflict is high, then most of its discretion is stripped away." Id.

Analysis under this sliding scale approach considers both structural and procedural factors. "The structural inquiry focuses on the financial incentives created by the way the plan is organized, whereas the procedural inquiry focuses on how the administrator treated the particular claimant." Post, 501 F.3d at 162. In regard to structural concerns, "[t]he court may take into account the sophistication of the parties, the information accessible to the parties, . . . the exact financial arrangement between the insurer and the company," and the current financial status of the fiduciary to determine the deference that should be accorded to the administrator. Pinto, 214 F.2d at 392. When structural factors are present, the deference this Court must afford to the

7

administrator's decision will be decreased.

Regarding procedural concerns, a district court must "look not only at the result—whether it is supported by reason—but at the process by which the result was achieved." Pinto, 214 F.3d at 393.  The Third Circuit has identified numerous procedural irregularities that create concern for the courts.  These include reversal of position without additional medical evidence, self-serving selectivity in the use and interpretation of physicians' reports, disregarding staff recommendations that benefits be awarded, and requesting a medical examination when all of the evidence indicates disability.  Post, 501 F.2d at 164-65 (citing Kosiba v. Merck & Co., 384 F.3d 58, 67 (3d. Cir. 2004)).  Similarly, when procedural factors are present, the deference afforded an administrator's decision is lower than under ordinary arbitrary and capricious review.

In the present action, this Court must determine how much authority Hartford was given under the terms of its insurance agreement with CVS.  Hartford had sole discretionary authority to determine eligibility in the CVS disability insurance plan.  The policy states that "[t]he plan administrator has delegated sole discretionary authority to Hartford Life and Accident Insurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan[.]"  (Admin. R. at HLI0024.)  Given that Hartford had sole discretion to administer benefits, under the test established in Firestone, this action is subject to arbitrary and capricious review.  Therefore, this Court must next assess whether structural or procedural conflicts exist, and determine the degree to which those conflicts will decrease the level of deference afforded to Hartford's decision.

One structural conflict stands out in this case.  That conflict involves Hartford's dual role in funding the disability plan, and being solely responsible for determining eligibility under the

plan. This financial arrangement is one that has long been of great concern to the Third Circuit in ERISA cases. The Third Circuit has repeatedly held that benefits plans administered and funded by outside insurers raise particular concern, and present a conflict that gives rise to heightened scrutiny all by itself. "[A]n insurance company [that] both funds and administers benefits, . . . is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." Pinto, 214 F.3d at 378. A recent decision of the Third Circuit held that this structural conflict "require[s] at least moderately heightened review." Post, 501 F.3d at 166. In light of this precedent, heightened arbitrary and capricious review will be applied in this action. Moreover, Hartford concedes in its brief that this Court must apply this standard of review, and Doroshow has not raised any objection in his response.

Regarding procedural factors, Doroshow claims that Hartford's reliance on the May 16, 2006, office notes of Dr. Goldstein is an anomaly that requires an even more searching review by this Court than that required under the moderately heightened standard. Doroshow is concerned that Hartford chose not to procure an independent medical evaluation. The Court assumes that Doroshow, while not specifically stating so, is arguing that Hartford's reliance on Dr. Goldstein's notes evidences a self-serving selectivity in the interpretation and use of a physicians' report that this Court must guard against. This Court disagrees. Dr. Goldstein was Doroshow's primary care physician. As such, Hartford's decision to rely on his opinions does not appear to be self-serving since Hartford had no control over the content of these records. This Court would be concerned if the insurer relied exclusively on the report of a doctor it hired, but that is not the case here. Furthermore, the opinions expressed in these records are in accord with the opinions contained in the other notes compromising the administrative record. Finally, this Court notes

9

that the record was replete with the notes of various medical experts in the field of motor neuron disease, and Hartford's decision not to obtain yet another expert's opinion does not raise the suspicions of this Court. Doroshow has not produced any evidence of procedural anomalies that require this Court to further decrease the deference it must afford Hartford's decision beyond that required under the moderately heightened arbitrary and capricious standard.

"Under the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law[,]" and "the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Pinto, 214 F.2d at 387. A heightened arbitrary and capricious standard requires that the Court work from this baseline, while keeping in mind that its review should be "deferential, but not absolutely deferential" to the administrator. Id. at 393. A moderately heightened arbitrary and capricious review affords less deference than the merely heightened level of arbitrary and capricious review. However, this Court cannot approach de novo review, which the Supreme Court has articulated is inappropriate in this situation. See Firestone, 489 U.S. at 115. With the above considerations in mind, this Court will now address the question of whether Hartford's decision that Doroshow was ineligible under the disability insurance plan is reasonable in light of the contract language, and whether that decision is supported by substantial evidence.

The language at issue in this action is the definition of "pre-existing condition" contained in the insurance contract between CVS and Hartford. The contract defines that phrase as "a condition for which medical treatment or advice was rendered, prescribed or recommended within 12 months (3 months for exempt employees) prior to *Your* effective date of insurance."

(Admin. R. at HLI0013).  At the root of the parties' dispute is Hartford's interpretation of the word "advice."  The contract does not specifically define advice, so this Court must apply the ordinary meaning associated with this word.  The dictionary defines advice as "an opinion or recommendation offered as a guide to action."  <u>The Random House College Dictionary</u> 20 (Laurence Urdang et al. eds., 1973).  This Court must determine if it was reasonable for Hartford to interpret the office notes of Dr. Goldstein as rendering advice regarding ALS.

      Hartford argues that summary judgement is appropriate because the medical evidence in the administrative record clearly shows that Doroshow received advice for ALS during the three months prior to his effective date of coverage.  Hartford advances the May 16, 2006 office notes from Dr. Goldstein as proof of this fact.  Dr. Goldstein stated that Doroshow had "Motor neuron disease.  Lumbosacral plexitis is the most recent diagnosis.  Was not felt to be ALS."  (Admin. R. at HLI0057.)  Hartford argues that ruling out a disease constitutes rendering advice.  Thus, according to Hartford, advice was rendered to Doroshow relating to ALS prior to his effective date of coverage, which justifies the denial pursuant to the pre-existing condition exclusion.

      This Court finds that Hartford was reasonable in determining that Dr. Goldstein rendered advice regarding ALS during Doroshow's office visit on May 16, 2006.  By stating his opinion that the motor neuron disease afflicting his patient was not ALS but rather lumbosacral plexitis, Dr. Goldstein rendered an opinion about ALS during the three months prior to the effective date of coverage.  Advice is a broader concept than treatment, and a doctor's conclusion that a patient is not suffering from a certain condition constitutes an opinion or recommendation offered as a guide to action.  Ruling out ALS meant that Dr. Goldstein would treat Doroshow's motor neuron disease differently than he might of had it been ALS.  Dr. Goldstein rendered an opinion that

dictated the course of action he would take in treating Doroshow, and that opinion constitutes advice under a reasonable reading of the contract.  Consequently, Hartford was reasonable in interpreting these office notes as advice pertaining to ALS, and its determination that Doroshow is ineligible for benefits under the plan due to the pre-existing condition exclusion should be afforded deference.

The record also showed that Doroshow had received advice regarding ALS on numerous other occasions since 2005.  Dr. Brown noted in that year that an EMG performed on Doroshow showed "[c]hronic active degeneration of right leg, arm, paraspinal and bulbar muscles with near-normal nerve conduction studies.  These are features of a motor neuron disease." (Admin. R. at HLI0072.)  Furthermore, he opined that "[i]f the left Babinski sign is a consistent feature then he has the ALS form of motor neuron disease." (Id.)  Dr. Brown recommended that Doroshow see an ALS specialist.  That specialist, Dr. McCluskey, noted in 2005 that Doroshow showed evidence of a lower motor neuron problem, but at the time did not exhibit signs of an upper motor neuron problem, which is a indication of ALS.[2]  Dr. McCluskey opined that Doroshow's symptoms did not support an ALS diagnosis in 2005. (Admin. R. at HLI0116.)  Thus, Doroshow had received many opinions about ALS.  The disease was considered by all three doctors who examined him.  Hartford's determination that Doroshow received advice

---

[2] "Amyotrophic lateral sclerosis (ALS) is the most common form of progressive motor neuron disease." Anthony S. Fauci, M.D., et. al., Harrison's Principles of Internal Medicine 2572 (17th ed. 2008).  "Although at its onset ALS may involve selective loss of functions of only upper or lower motor neurons, it ultimately causes progressive loss of both categories of motor neurons.  Indeed, in the absence of clear involvement of both motor neuron types, the diagnosis of ALS is questionable." Id.  The World Federation of Neurology has established guidelines for diagnosing ALS.  "The disorder is ranked as 'definite' when three or four of the following are involved: bulbar, cervical, thoracic, and lumbosacral motor neurons." Id. at 2573.  "When two sites are involved, the diagnosis is 'probable,' and when only one site is implicated, the diagnosis is 'possible.'" Id.  When a patient exhibits signs of a motor neuron problem, ALS is routinely considered as a possible condition by members of the medical community.

pertaining to ALS during the three months prior to his effective date of coverage is therefore reasonable, and is supported by substantial evidence in the record.

 Doroshow's contention that no advice was rendered to him regarding ALS has no merit in light of the above discussion. Doroshow bases his argument on the decision in Ceccanecchio v. Continental Cas. Co., 50 F. App'x 66 (3d. Cir. 2002). However, that case is distinguishable from the present action. The plaintiff in that case visited her doctor for a routine gynecological exam, prior to her effective date of coverage, and during that exam indicated to her doctor that she was experiencing urinary frequency and urgency. Id. at 67. Her doctor ordered a urinalysis, and recommended that she see a urologist if the results were negative. Id. The results came back negative, and the patient then visited with a urologist after she was covered under her insurance plan. Id. at 68. The urologist ultimately diagnosed with an interstitial cystitis. Id. The insurance company denied her claim for disability benefits pursuant to a pre-existing condition clause.

 The Third Circuit found that the decision in Ceccanechio was arbitrary and capricious because the plaintiff's symptoms were non-specific during the look back period, and the insurer had no medical evidence in support of its contention that she had been treated for interstitial cystitis during that time. That insurer had argued that because a primary symptom of interstitial cystitis is frequent urination, it was self-evident that she had the condition when the urinalysis was ordered, which meant that she received treatment for that condition. Id. at 71. The plaintiff showed that no medical opinion linked her symptoms with interstitial cystitis, and her symptoms were non-specific and indicative of a large range of diseases. Id. In finding that the insurer was not entitled to deference, the Third Circuit noted that there is a difference between a suspected condition without a confirmatory diagnosis, and misdiagnosis or an unsuspected condition

manifesting non-specific symptoms.  Id. at 72-73.  Since interstitial cystitis was an unsuspected condition, the Third Circuit held that it could not constitute a pre-existing condition.  Id.

Doroshow contends that his situation is similar to the plaintiff in Ceccanecchio in that his ALS was an unsuspected condition manifesting non-specific symptoms.  His argument is incorrect.  Doroshow was known to suffer from a motor neuron disease during the look back period, and ALS was specifically considered during his visit with Dr. Goldstein on May 16, 2006.  Doroshow was also not misdiagnosed.  He was initially diagnosed with a motor neuron disease, and in March 2007, he was conclusively diagnosed with ALS, the most common form of motor neuron disease.  While Doroshow's condition was not labeled ALS, that disease was always a consideration for his doctors, unlike in Ceccanechio where doctors never suspected the condition upon which a disability claim was made.  Doroshow has not shown that Hartford's decision was arbitrary and capricious.  Consequently, his Motion is denied.  Hartford has shown that it is entitled to summary judgment, thus its Motion will be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAY DOROSHOW, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 08-259 |
| HARTFORD LIFE AND ACCIDENT INSURANCE CO. and CVS CORPORATION LONG TERM DISABILITY INCOME INSURANCE PLAN | |
| Defendants. | |

## ORDER

**AND NOW**, this 30th day of May, 2008, upon consideration of the Motion for Summary Judgment filed by Plaintiff Jay Doroshow (Doc. No. 7), the Motion for Summary Judgment filed by Defendant Hartford Life and Accident Insurance Co. (Doc. No. 10), and the responses thereto, it is hereby **ORDERED** that**:**

1. Plaintiff Jay Doroshow's Motion for Summary Judgment is **DENIED**; and

2. Defendant Hartford Life and Accident Insurance Company's Motion for Summary Judgment is **GRANTED**.

BY THE COURT

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE